and we will hear argument in Callwood v. City of Kingston, 22091 and 22096, consolidated Ms. Kline. Good morning, your honors, may you please support Kelly Kline for the defendant appellants James Meyer, Denise Timbrook, and Tamantha Stitt, they are also known as the county defendants. I respectfully submit that the district court made five critical errors when denying qualified immunity to these defendants, that is Meyer, Timbrook, and Stitt on summary judgment. First and foremost, it's on the third cause of action with Denise Timbrook and James Meyer. I respectfully submit that the district court made a critical error when finding issues of fact as to the condition of the children and the condition of the hotel room and whether it was- I don't know that I would describe it as finding issues of fact. I might describe it as determining that there were genuine disputes of fact. Yes, your honor, I think that is true. There are disputes with the fact of the condition of the children in the hotel room. If that's true, then why do we have appellate jurisdiction? Why should we review these? Yes, respectfully, your honor, I believe there's appellate jurisdiction based upon Mitchell v. Forseth. That is 472 U.S. 511. And that's when the Supreme Court ruled that there was summary judgment motion is based upon a substantial claim of qualified immunity. The district court's denial of the motion is immediately appealable under the Cohen Doctrine if the denial turns on an issue of law. And we think it is an issue of law that this turns on because those facts are not material to what the decision was made on. For Denise Timbrook and James Meyer to make a determination to remove the children, it was objectively reasonable for them to do so based upon the information that was given to them at the time of the removal. And that information was provided to them by the Kingston Police Department. They had no other information available to them at the time, and it was objectively reasonable for them to rely on that information, and thus they should be given qualified immunity. Can I just ask, now you're talking about removal in terms of from removal at the hospital and the kids being put into custody, or that's the point at which you're referring to removal? Yep, Your Honor. So removal actually occurred by the police when they removed them from the hotel room to the hospital. The actual removal of the children from the custody of their parents to the custody of the county occurred after they got the CPS report. So I know that Plaintiff Appelli does argue that the removal was done at the hospital, but the children had already been removed by the police, and CPS had no other alternative but to physically remove them to the custody of the county because the parents could not be contacted. The children are already in the hospital. But there's not a separate, and I may be confused on this, there's not a false imprisonment claim as to what's going on at the hospital? It's not, there's not separate claims being made here? It's complicated to say. It's our position that there was one removal from the county. There is no second removal at the hospital. Well, but is that how it's being, is that what the allegation is, whether or not you believe that is accurate? Yes. No, Plaintiff does make that allegation, Your Honor. Okay. And so I think the idea is with regard to at the point when they're at the hospital and they're removed or placed into custody, I believe there's a factual contention that these two, Meier and Timbrook, had additional information beyond just the report. Because before the children are removed from the hospital, they have started, there are some investigations, there is a factual dispute that they actually maybe have more information than just the initial report. Yes, Your Honor. That is correct. But the determination to remove the child, the children to the custody of the county had already been made and they could not contact the parents. So even if they got additional information at the hospital, they still had no way to give these children back to their parents. They were unable to be located, they couldn't be contacted, and they couldn't hold them in the hospital based upon a CPS hold. And there's no factual dispute in terms of the parents couldn't be located in those issues? There is a factual dispute. Plaintiffs do argue that they did not receive any calls from the police department. However, the police department, I see that my time is up, but may I finish, Your Honor? I'm very interested in your answer to this question. Yes. So plaintiffs do argue that they did not receive phone calls from the police department. However, there's no evidence that they did not get those calls. Additionally, my clients, Meier and Timbrook, were advised multiple times by the police department that they had to contact them. So one side says, we never got a call. Correct. Why isn't that evidence that they never got a call? Well, Your Honor, we looked through their police, I'm sorry, we looked through their phone records. There's no indication that they had any missed calls or that they received any calls. So it's hard to say. Our position is that the police department did contact them on multiple occasions. Of course, I understand that's your position. And it's a position you ought to take, I'm sure. The question is whether there was a factual dispute. And so take me through this because I'm a little slow. One side says, we never received a call. Another side says, no, we tried to call you, tried to contact you. Why isn't that a factual dispute and why isn't that material? Since part of the assessment of removal is, did they try to contact the custodian, the parents in this case? Yes, Your Honor. So with the position of Meyer and Timbrook, they were told by the police that they attempted to call them multiple times. It is a disputed fact, but it doesn't prevent the Meyer and Timbrook from having a reasonable and objective decision to remove the children from their custody at that time. They were only told that they could not be contacted and it was reasonable for them to rely on that information. Thank you. Mr. Cook.  May it please the court. My name is Michael Cook. I represent the City of Kingston defendants officers, Sergeant Kirk Strand officers, Emily Summer, Robert Farrell, Michael Mills and detectives Bowers and Negron. There's a number of causes of action that remain as against the city defendants, but I would like to point out a few of them, at least with respect to Sergeant Kirk Strand. I do believe that qualified he would be entitled to qualified immunity on the causes of action as against him, specifically the initial one, which is false imprisonment. He was not present at the time that the officers were speaking with the infant plaintiffs. He made a determination based on what other officers told him. So I believe that was objectively reasonable for him to instruct his officers in the manner that he did, which would also with respect to the unlawful medical examination based upon what he was told the ambulance was decided to be called and then since they were unattended children, the determination was made by the paramedics that they needed to be removed to the to the hospital, but even the initial medical examination based upon what he was infants from the parents custody that the county's been clear that they made that determination Sergeant Strand had no authority to even offer opinions in that and then with respect to deliberate indifference to medical needs. There's no evidence that Sergeant Strand was even present in the same room as a plaintiff Hardaway and therefore there's no knowledge that he was aware of any serious risk or was deliberately indifferent towards him. Was he with respect to that issue? He was told about Mr. Hardaway's condition, but then told as I understand it that the officers on the scene thought he was faking it, is that right? That's correct. That was the detective Bowers as far as I was concerned, but he also had no opportunity to even intervene in order to, you know, address that situation. And with respect to Officer Somer, two causes of action remain with to her. One is false imprisonment. Again, when she arrived at the scene, the at least one of the children was already out of the room. She was able to see into the room. She made observations regarding their condition. And also she wasn't the one who decided to call mobile life. So even, you know, her actions in being present during that time were objectively reasonable under the circumstances. And the same would go to the unlawful medical examination that's alleged as well. And moving on with respect to Bowers and Negron, their claims are that against them, and I'll speak to them together, the deliberate indifference to medical needs. Again, there's no indication as Bowers indicated, he didn't believe that the plaintiff suffered a medical condition. There was no serious harm that resulted from him. There was no reason for Bowers or Negron to have it. Is it right that there was evidence that Mr. Hardaway was unconscious when he fell, he was unconscious? Was there evidence? I'm not saying if it was true or false, just evidence of that. Yeah. And I'm not sure how to answer that, Your Honor, just as far as evidence, whether whether his eyes were closed or whether he needed to be moved in order to, to get up, you know, there may have been evidence of that, but whether he was unconscious, I, I don't know if we can, if we can go to there. Okay. Was there also evidence that his wife, um, uh, Ms. Caldwell, uh, indicated that he had a heart condition and needed medication? Again, that's, that's her testimony, Your Honor. Yes. So that's evidence, right? Yes, Your Honor. Yes. But as far as whether it was credible evidence, as far as the officers Bowers and Negron at the time that they were dealing with Mr. Hardaway, I don't believe there's, there was credible evidence. Um, well, that's the, that's the problem when, by the time you were talking to us, uh, whether the evidence is credible or not, uh, that's, that's a lot more difficult for you. Uh, but there was evidence. Okay. Right. And just finally, with respect to officers Farrell and Mills, um, just for the record, uh, Your Honors, I do believe that they would be entitled to qualified immunity as well. I know, um, there was some question as to the condition of the room before or after, but there is also, um, testimony from a non-party, Rebecca Maxwell, who's had no involvement in this incident. And so I, I, again, the credible evidence, um, is not in dispute. Yeah. Well, I mean, evidence is evidence. Right. Okay. Thank you, Your Honors. Um, Mr. Bergstein. Yes. Good morning. May it please the court, Steven Bergstein for the plaintiffs. Uh, this court has no appellate jurisdiction over this appeal. Um, every claim that survived summary judgments, uh, the district court held that factual disputes prevented the grant of qualified immunity. Uh, there were no novel, uh, legal issues relevant to this appeal. There's no unresolved issues that would allow defendant to claim that this clearly established law question that confers appellate jurisdiction and defendants don't argue otherwise in their brief. This is a factual challenge to what Judge Sharp said on the motion for summary judgment. Defendants do not adopt our facts for purposes of, uh, conferring appellate jurisdiction, which is one way to do it. Um, this court in Franco versus Gonzalez two years ago said that there is a, appears to be a bright line rule that if the district court identifies factual disputes on a qualified immunity motion, uh, that, uh, such an evidence sufficiency argument, uh, makes it impossible, uh, to confer appellate jurisdiction. And so I don't know that I would describe that as a bright line rule in view of some other decisions that we've issued since then. But, um, but I understand what you're saying. It's pretty close. And it's, I think Franco was the last published appellate jurisdiction ruling from this court and Judge Calabrese sort of thinks out loud and says, well, maybe a defendant might argue that the district court's factual conclusions were so clearly wrong. That as a matter of law, we can have appellate jurisdiction. But then he says, it's an interesting way to get around it, but we don't do that here based on Johnson versus Jones. And we are holding firm on the principle that if there's a, uh, the district court identifies an issue of disputed fact for purposes of qualified immunity, that there is no appellate jurisdiction. And that really settles it because every claim here does, I think there's 15 claims here. Each claim, Judge Sharp says, there's issues of fact that make it impossible for me to grant some qualified immunity on these claims. So we really don't need to get to the merits on any of this. This court has no basis to hear this appeal, but let me address some of the issues. I mean, the judge, the judge needs to be correct that the issue of fact is one that's pertinent to the, to the, to the, to the judgment. There can be factual disputes as to an issue that turns out to be irrelevant to who wins or loses. That's not what this court said in Franco, that the, that would address what Judge Calabrese suggested in Franco, that maybe the district court just got it wrong and identifying them. But, but, but, you know, we're getting into evidence sufficiency here and the way I read this thing, it's not the first time this court has done this, that there's no jurisdiction when the district would identify as material factual disputes. What we're hearing from defendants is, well, he identified material factual disputes, but they got it wrong. That, but Judge Sharp got it wrong. That's not enough. But let me talk about some of the issues on the merits, just because there's a succinct way to address some of this. Nearly all of the claims made by the city on appeal involved disputed facts stemming from the original visit to the Super 8 hotel. And those factual disputes have to do with how the police entered the room, what the room looked like when the police showed up, whether the police turned the room upside down in this, this search where they went through all the plaintiff's belongings, the dresser drawers, the pocketbook, whether the police called the parents despite having access to their phone numbers, whether the children look healthy or sickly. Section two of our statement of facts in the brief gets into all of these issues from our perspective, largely from the testimony of the plaintiff's daughter who said she told the police, look, I have a cell phone with my father's cell phone. Call my father. And the officers didn't do it. And a large part of defendant's claim is we took the kids out of the hotel and then we If the officers had access to the parents' phone number, that argument falls away and the jury can rule in our favor. The arresting officers, the officers who showed up initially knew the children were healthy because the EMS subjected them to a medical exam and held as such. And then the hospital, a little while later, also said the kids were healthy. So if most of the city's arguments challenge those facts, then nearly all the claims against the city cannot be resolved on a motion for summary judgment. Because it all starts from the original sin of what happened when the police came to the hotel room. How about the hospital? How about Meyer and Timbro? Who are relying entirely on the information they received? What's the material factual dispute there? They're not relying entirely on the report. As Judge Sharp noticed, Meyers and Timbro began conducting their own investigation. And Meyers learned that the children were healthy based on their physical appearance and the medical evaluations that had taken place. Meyers never updated Timbro about these new developments. It's interesting how this all shook out. Timbro is the supervisor. She's not there, but she's telling Meyer what to do. Meyer doesn't call Timbro back and say, this is what I've learned. I don't think we have a basis to remove these children because we don't have exigent circumstances. So how about Timbro then? Who doesn't learn of any new information? Timbro appears to be operating in the understanding that once you make a decision to remove the children, that decision cannot be undone. You know, remember what happened after the kids were in the hospital. Meyer took the kids to foster care. If you're taking children away from the parents to foster care without a court order, you need imminent danger to serious health and safety. That's about as difficult a legal principle as you can satisfy in any court. She was under an obligation once the children were removed and after she obtained additional information to undo the removal? Is that what you're saying? Yes. If that's what you're saying, what's the legal basis for that? To not take the kids to foster care. I don't think you have a one-way rule on this. I understand you don't. I'm asking for what is the legal basis for that. I don't know of a case that addresses facts like this where once you learn that there's no imminent basis to remove the kids to foster care, that you can't undo that ruling. Remember, Meyer testified that one of the reasons, the main reason they removed the kids to foster care, he said this I think in family court and in one of the cases where they didn't contact the parents. So that night, February 8th, Hardaway did get on the phone with Meyer and he said, I want my kids back. So the problem is solved. Now we know where the parents are. Hardaway is no more than five minutes from Meyer because the city of Kingston is not that large. And he can pick up his kids within minutes. And Meyer said, no. See you Monday in family court. So if the concern was that we're taking these kids to foster care for seven days because we can't find the parents. And then you get the parents on the phone and they say I want my kids back and you say no. You know, that violates Mickelson, all those cases about when you can remove a child without a court order. How long after, I'm just focused on Tim Brook again, how long after she received this additional information, how long have the children been in removal at the foster home? I think it was three or four hours. It was that night. A lot of this was that night. When Meyer's got on the phone with Hardaway, it was like 10 o'clock at night and the kids were taken to the foster home maybe at 6 o'clock, 7 o'clock. So they weren't there that long. But, you know, again, if the concern is we can't find the parents and then you find the parents and the kids go back because there was no health and safety and there was no imminent emergency here. Which is what you have to show to take the kids away without a court order. This is as dramatic a decision as the county could make with respect to some of these kids. Tim Brook's testimony shows that she really didn't know what she was doing. Some of the testimony is pretty surprising. She wasn't familiar with procedures. She wasn't familiar with the rules. Our expert report really gets into this by a retired family court judge and his opinion, his expert opinion reads like a judicial opinion. He's shocked at what happened here with respect to the removal of the children to foster care. And I know it's somewhat corollary to the claims against Myers and Timbrook. But, you know, the Dickensian conditions that the children face in foster care were pretty upsetting because they had no business being there. And the father had a fight to get his kids back. It was heroic. So, you know, but all these issues that we're talking about, Judge Sharp said there were, you know, disputed issues of fact. And he cites to the record in his lengthy opinion, he did a thorough job on this. You know, these are issues for trial. And I don't think this court has authority to second guess evidence sufficiency questions on a qualified immunity case. If this court can do so, then it's a very high bar that I don't think defendants can overcome this court's most recent decision on this issue in Franco. So for these reasons, this court should either affirm or dismiss the appeal for lack of appellate jurisdiction. Can I ask you about Sergeant Strand? Yes. So at least with respect to the incident involving Mr. Hardaway, your adversary says that he's entitled to qualified immunity because he wasn't there. He is told that it's not a serious issue, that is that Mr. Hardaway is entitled to qualified immunity. That's it. Again, sort of along the same lines as in particular Timbrook, the argument on the other side is he's just relied on information that was given to him. He had no basis to dispute or otherwise contend with that information. Why isn't he entitled then to qualified immunity? I must say of all the defendants in this case and of all the claims, that Mr. Hardaway probably is their best argument after 200 pages of briefing. So they did zero in on the one claim. The district court said that there's an issue of fact as to Strand's personal involvement. He heard Bowers say that Hardaway was faking it. I think Hardaway's wife was upset and she was saying it and Strand may have overheard it. He's not faking it. He needs his medicine. What are you doing? Hardaway collapsed and passed out. That's the deliberate indifference claim. But Strand didn't see any of that. He just hears he's faking it. Would you agree that that's a problem? That is a problem for me. Not as a matter of personal involvement, but as a matter of how do we describe that under any set of facts that I've seen at least. As objectively unreasonable. Again, that is probably I don't want to say any claim is weak as a plaintiff's lawyer. That's probably the strongest argument defendants can make out of all the defendants here. He was present when this happened. He probably heard Calwood say he needs his medicine. The district court said there was an issue of fact. We're getting into evidence efficiency questions here again. This is an issue of fact. This is an issue for the trial court, not the appellate court. Yeah, but to follow up on the question that just the ball. Ass and I can't remember if it was a viewer of your friend on the other side. Your friends on the other side. There are. We still have some obligation to determine that the factual the facts in dispute of material. What, what, what is the material fact in dispute with respect to Sergeant Strand as it relates to the deliberate indifference claim? He's supposed to take the officers at their word that somebody's faking it. How does he know somebody's faking it? That's a pretty big risk. You know, if, because if somebody is not faking it, he could, he could end up in the hospital. What is the dispute? The dispute is stranded and intervene. You know, he hears, oh, he's faking it. It's not a big deal. Nevermind. Strand should say, wait a minute. You know, there's no, there's actually no dispute about that. Right. He acknowledges. I agree. But strand should have said, wait a minute. If that's true, you know, take the easy way out, take him to the hospital. Let's be careful about this. There's no reason to think Carter was faking it. You know, if you want to be careful, take him to the hospital. If you, if you say, well, just you guys do whatever you want to do. I don't care what happens. You're taking a risk. And then what? Finally, at least for my part. What are we to do with. Summer. Who has. I think it was Mr. Cook. Are you. Was just present. At the hospital. At the hospital. Well, she knew the children were healthy. She knew what was going on. She could have intervened and said, why are they here? Do we have a court order? What are we doing here? The kids are fine. You know, you took him out of the hospital. You took him out of the hotel for what? You know, are you sure we can do this? Remind me, remind me with her. I just don't have that. Quite on my fingertips, but remind me with her. What the issue of fact was, or the dispute of fact. Was that. Just sharp identify. With respect to her. If I just check my notes here. There's so much here. She was aware that the children were, were healthy. And that the daughter was 12 years old and was able to babysit her son. And again, the question is. Are you sure we're allowed to do this? I don't think we're allowed to do this based on clearly established law. And she said nothing. She complied with. With another officer's illegal. Practice. And keeping in subjecting the children to a medical exam. The officers had no legal right to subject the children to. But I would agree. Some defendants are more guilty than others in a case like this. You know, I think the primary, you know, the defendants who are most liable. Probably. Mills and Farrell for the city. And for the county, it's probably Myers and Timbrook. Okay.  Thank you. Thank you. So we'll hear from this client on rebuttal and thereafter from Mr. Cook. This client. Yes. Thank you, your honor. So in response to. I just want to make a point of appellee's argument about jurisdiction. This court does have appellate jurisdiction. And that is because this is not a factual dispute. The issues of the fact. Or immaterial and irrelevant. Particularly with Denise Timbrook and James Meyer. They made their decision based on objectively reasonable information that they received from the. You're asking us. You're asking us just so that I understand. I'm asking you. I'm asking you to understand. To explicitly disagree. With judge Sharpe's assessment that these were disputes of material fact. Yes, your honor, because we do. They are not material. To specifically social services law for 19, where it states that they need to have an objective, a reasonable basis to do these things in order to get qualified immunity. And with. You agree that Franco says what. Mr. Bergstein says. It says. And that it's a more or less a straight jacket. No, I do not. Okay. I do not. What, what, what are you relying on to. To say that you don't, that you disagree. For Denise Timbrook and James Meyer, particularly. If plaintiff's facts. What, what, what, what, what. Case of ours. Do you rely on to say that actually there are exceptions to Franco? So. Your honor, I can't say that there are exceptions to Franco, but. Cases that have been heard by this court, where they have granted jurisdiction for qualifier immunity is seven. The French that's eight 50 federal appendix. 32. That was decided in March of last year by your honors. And then again in Calhoun. And that's number two. Two zero dash four, two, three, nine dash CV. And that was decided in December of last year. And both of those decisions. This court determined that there was a pellet jurisdiction on issues of qualified immunity. Particularly. The entitlement is an immunity from suit rather than a mere defense to liability. And like absolute immunity is effectively lost. If the case is erroneously permitted to go to trial without this being decided. That's that's true as a general principle, but. Okay. You don't have any other. No, your honor. Thank you for your time. Thank you very much. Mr. Cook. Good morning again. Just in response to Mr. Bergstein with respect to Emily Selmer. There is no failure to intervene claim. The only cause of action against her false imprisonment. And unlawful medical examination. So. The fact that she, and it's solely based on the fact that she was present. So I don't think there are any issues disputed issues of fact, especially with respect to officer Somer and, and her actions were objectively reasonable under the circumstances. Are you saying that there's no failure to intervene? Allegation as, as against her. Right. Yeah. There's no cause of action for failure to intervene as against her. And with, with respect to, to sergeant strand, I would, I would also say, you know, even assuming the facts as. True. As far as the plaintiffs. Testimony sergeant strand is relying on his officers at the scene. Officers he's worked with in the past. To give him information to make credible decisions on. So I still think, you know, as far as he's concerned, there would be qualified immunity as well. And, and even with Bowers and Negron, I think. There's no, there's no evidence that they were aware of, of a serious physical condition. And therefore they couldn't deliberately be indifferent towards his medical needs. So I think, I think under the, you know, those four, I also believe are. There. Bowers and Negron where. During, is this with Mr. Hardaway? Yeah. Bowers and Negron with Mr. Hardaway. Correct. They weren't there when he falls. They were there, but they didn't believe that, that he was suffering from any medical need. Okay. Okay. Right. So that's that, but that's why you, you say that. They're they're entitled to qualified immunity. They genuinely didn't believe that he was sick. Correct. Okay. And there's a dispute about that, of course, but okay. Okay. Thank you, your honors. Okay. Thank you very much. I believe that we are all done. We'll reserve decision. And that concludes today's argument calendar. And I'll ask the courtroom deputy to adjourn court. Thank you. Thank you. Thank you. Thank you all for listening. Thank you.